## THOMAS RODD, JR.
### vs.
## NORWICH STATE HOSPITAL

Superior Court      New London County      File #12544

Present: Hon. CARL FOSTER, Judge.

Henry J. Calnen,                 Attorney for the Petitioner.

Charles J. McLaughlin,
Attorney General,            Attorney for the Respondent.

## MEMORANDUM FILED NOVEMBER 4, 1937.

FOSTER, J. On the 28th of October, 1937, a friend of Thomas Rodd, Jr., preferred his complaint in habeas corpus to a Judge of this court, claiming that, without law or right, Thomas Rodd, Jr., was being held in the Town of Norwich by the Norwich State Hospital.

On said day such Judge of this court issued a writ of habeas corpus, commanding the Norwich State Hospital to bring the body of Thomas Rodd, Jr., before this Court, sitting at New London for the County of New London on the 29th day of October, 1937 at 10 o'clock in the forenoon.

On the 29th day of October, 1937 at 10 o'clock in the fore-noon the respondent brought the petitioner before this Court.

The respondent was represented by the Attorney General. The Attorney General had not had opportunity or time to draw a return to the writ nor to consult with witnesses. He could only present to the Court a copy of the committment papers, evidencing the fact that on the 6th day of October,

1937 Thomas Rodd, Jr., was committed to the Norwich State Hospital for one year as an inebriate by the Probate Court for the District of Washington of this State.

This Court, on October 29th, 1937, heard the testimony of Thomas Rodd, Jr. It appeared from such testimony that an injustice had been done Thomas Rodd, Jr., so grave that there must of necessity exist facts not appearing in such testimony.

The Court thereupon continued the case to November 2nd, 1937, at 2 o'clock in the afternoon, so that the respondent might have opportunity to draw and file a return to the writ and to produce witnesses.

At said time Thomas Rodd, Jr., was again brought before the Court, and witnesses for the respondent were heard.

Some minor facts are disputed, but they need not be considered. We do not have to weigh the testimony of Thomas Rodd, Jr. It is sufficient to accept the facts as presented by the three witnesses produced by the respondent.

It appears that every two or three months Thomas Rodd, Jr., a man of fifty-three years of age, drinks intoxicating liquor in quantities sufficient to intoxicate him and continues in that condition three or four days; that, with the exception of these periods, he does not drink intoxicating liquors. For some time up to February, 1937, Thomas Rodd, Jr., lived with his wife in a rented house in the Town of Washington. He has one son, Thomas Rodd, 3rd, in business in New York, and another son in college. In February, 1937, Thomas Rodd, Jr.'s wife went to Ohio, where she has since remained, and he and his wife have not since that time lived together. He went to the Hartford Retreat in Hartford for a time. At that time they moved their furniture and other personal property out of the house and stored it in a storehouse in the Town of Washington, and their lease of this house expired on June 1st, 1937. Thomas Rodd, Jr., has since February, 1937 had no home in Washington. He left Washington with the intent not to return there to live. It does not appear that his wife or either son ever expected to return to Washington to live in any home there of Thomas Rodd, Jr. After coming out of the Hartford Retreat, Thomas Rodd, Jr., went to Great Barrington, Massachusetts for two months and then to Yarmouth, Maine, where he occupied a small house by himself during the summer. About October 1st he went to Portland, Maine, intending to go on to Pittsburgh, Pennsylvania, to visit relatives.

While he was in Portland, his son, Thomas Rodd, 3rd, heard that his father was intoxicated.

On October 4th, Thomas Rodd, 3rd; went before Hon. Charles T. Mason, Judge of Probate for the Probate District of Washington, and represented that his father, Thomas Rodd, Jr., resided in the Town of Washington, and that he was "an inebriate person", and applied to have Thomas Rodd, Jr., committed to The State Farm for Inebriates, a Department of the Norwich State Hospital for the Insane in the Town of Preston, Connecticut.

No time for a hearing on the said application was set on October 4th.

Between that time and 6:30 P. M., October 6th, however, the Judge of Probate appointed two physicians to examine Thomas Rodd, Jr., drew on a typewriter a formal report of such physicians, appointed a selectman of the Town of Washington to investigate and report on the residence and financial status of Thomas Rodd, Jr., and drew the report of such selectman and had it signed by him, drew the order of commitment and the return of the constable of service of such papers upon Thomas Rodd, Jr. There was lacking from such papers only the signatures of the Judge of Probate, the doctors and the constable and the period for which Thomas Rodd, Jr., was committed.

Thomas Rodd, 3rd, drove in his automobile to Portland, Maine, and found his father in a hotel. On the morning of October 6th, 1937, the son bought a bottle of whiskey and, with the knowledge of his father, put it into his automobile. He testifies that his father would not have entered the automobile, had there been no whiskey in it. The father had another bottle of whiskey. At 9 o'clock A.M. they started on the long ride from Portland, Maine to Washington, Connecticut, reaching the latter place about 6 P.M. During the day, the father, with the knowledge and consent, not to say with the encouragement, of the son, imbibed freely of the whiskey; and when he reached Washington he was deeply intoxicated. The son had telegraphed the Judge of Probate of the approximate time of their probable arrival. When they reached the probate office, the Judge of Probate, the two doctors and the constable were all there in waiting at that unusual hour of 6 P.M. Thomas Rodd, Jr., did not leave the automobile; he was too much intoxicated. The constable

went to him and went through the legal form of serving upon him the notice of the probate hearing. The doctors went to him and examined him. These three then went before the Judge of Probate and signed their respective returns. The Judge of Probate heard the testimony of Thomas Rodd, 3rd, presumably, and then signed the commitment of Thomas Rodd, Jr., to the State Farm for Inebriates, a Department of the Norwich State Hospital for the Insane in the Town of Preston, Connecticut for a period of one year.

It is claimed that the Probate Court acted by virtue of **G. S., Sec. 1791.**

Thomas Rodd, Jr., neither resided nor was domiciled in the Town of Washington at the time the Probate Court acted. He was brought to the Town of Washington without his knowledge and against his will. At no time did Thomas Rodd, 3rd, tell his father that he was taking him to the Town of Washington. This statute does not apply to Thomas Rodd, Jr. The Probate Court for the District of Washington had no jurisdiction over Thomas Rodd, Jr., at the time in question.

The notice given to Thomas Rodd, Jr., of the so-called hearing was not that "reasonable notice" required by statute. It was no notice at all. It might as well have been given to a man in coma. Even had he been mentally normal, the notice was not reasonable, for it gave him no opportunity to prepare and present a defense.

It is this sort of high-handed ill considered action of some men occupying judicial position that sometimes justifies some of the criticism of our courts. Under the law of Connecticut no court has more honorable and important duties and responsibilities than do our probate courts. The State looks to all of these courts and to the judges who preside over them, to do full justice to all men. In the history of our probate procedure, covering a period of more than two hundred years, the instances of ill considered action by our probate courts have been very rare.

This son and his brother and his mother have undoubtedly been greatly distressed by the acts of the father and husband at periodical times during the past many years. They undoubtedly desire to help him overcome his weakness. It may be that at times he should be placed under restraint. If this be done, it must be done strictly in accordance with the law and with the exercise of mature judgment and sound discretion.

It is decreed that Thomas Rodd, Jr., be discharged from involuntary restraint and given his full liberty forthwith.